IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-01122-WJM-KLM

JANA DILLON JAMIESON,

    Plaintiff,

v.

HOVEN VISION LLC,

    Defendant.

**RICHARD LIEBOWITZ'S RESPONSE TO ORDER TO SHOW CAUSE**

Richard Liebowitz, by his attorney Michael T. McConnell, respectfully submits the following response to the Court's order to show cause, dated December 1, 2020. [Dkt. #32] Therein, the Court directed Mr. Liebowitz to show cause: a) why he should not be sanctioned, and b) why his Motion to Withdraw should not be stricken.

**I.    THE REQUEST FOR SANCTIONS SHOULD BE DENIED -- MR. LIEBOWITZ HAD A GOOD FAITH BASIS TO FILE SUIT IN THE DISTRICT OF COLORADO BASED ON EXISTING CASELAW AND FACTUAL EVIDENCE.**

In *Chambers v. NASCO, Inc.,* 501 U.S. 32, 33, 111 S. Ct. 2123, 2126, 115 L. Ed. 2d 27 (1991), the Supreme Court set forth the standard for imposing sanctions under the Court's inherent power:

> Federal courts have the inherent power to manage their own proceedings and to control the conduct of those who appear before them. In invoking the inherent power to punish conduct which abuses the judicial process, a court must exercise discretion in fashioning an appropriate sanction, which may range from dismissal of a lawsuit to an assessment of attorney's fees. Although the "American Rule" prohibits the shifting of attorney's fees in

> most cases, an exception allows federal courts to exercise their inherent power to assess such fees as a sanction when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, as when the party practices a fraud upon the court, or delays or disrupts the litigation or hampers a court order's enforcement . . . Because of their very potency, inherent powers must be exercised with restraint and discretion.

*Chambers,* 501 U.S. at 33-34 (internal citations omitted).

Under Tenth Circuit law, "to use this inherent power to impose sanctions, most courts require a showing of 'bad faith' by clear and convincing evidence." *Hislop v. Paltar Petroleum Ltd.*, No. 17-CV-02371-RBJ, 2018 WL 5014123, at *8 (D. Colo. Oct. 16, 2018) *(citing Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1255 (10th Cir. 2015). Accordingly, a finding of bad faith should not be based on "matters of assumptions and speculation." *Hislop,* 2018 WL 5014123, at *8. "Conduct amounts to 'bad faith' if it shows 'intentional or reckless disregard' of the rules." *Xyngular Corp. v. Schenkel*, 200 F. Supp. 3d 1273, 1301 (D. Utah 2016), *aff'd sub nom. Xyngular v. Schenkel*, 890 F.3d 868 (10th Cir. 2018).

The Second Circuit's holding in *Schlaifer Nance Co., Inc. v. Est. of Warhol,* 194 F.3d 323, 340 (2d. Cir. 1999)[1] establishes that sanctions against an attorney may not be sustained where the attorney's action was nothing more than "the result of poor legal judgment." *Id.* (reversing sanctions imposed because "poor legal judgment" is not

---

[1] Several federal courts have described the Second Circuit as the "*de facto* Copyright Court of the United States." *Easter Seal Soc. for Crippled Children & Adults of Louisiana, Inc. v. Playboy Enterprises*, 815 F.2d 323, 325 (5th Cir. 1987); see also *Kid Stuff Mktg., Inc. v. Creative Consumer Concepts, Inc.*, 223 F. Supp. 3d 1168, 1180 (D. Kan. 2016); *Looney Ricks Kiss Architects, Inc. v. Bryan*, 2010 WL 4068885, at *5–6 (W.D. La. Oct. 14, 2010).

sanctionable where "there is no evidence to suggest that [Appellants] had utterly no basis for their subjective belief in the merits of their case"); *see also In re Sutter*, 543 F.2d 1030, 1035 (2d Cir. 1976) ("we agree that attorneys should not be disciplined by financial reprisal for conduct attributable to mistake, inadvertence or error of judgment") (internal quotations omitted); *accord Mahan v. Roc Nation, LLC*, No. 14 CIV. 5075 (LGS), 2016 WL 4718018, at *4 (S.D.N.Y. Sept. 9, 2016) (finding that attorney's conduct on appeal, "albeit misguided, was not in bad faith" because attorney "articulated a legal basis for his appeal that, while meritless, does not evidence bad faith.").

In the Court's Order, the Court determined that on the basis of the allegations set forth in the complaint, "Plaintiff's allegations plainly do not establish a plausible basis for personal jurisdiction over Defendant. Plaintiff does not allege that Defendant's contacts with Colorado are continuous or systematic. Nor does Plaintiff allege that her injury in this action is in any way connected with Colorado. As Plaintiff resides in Hawaii and Defendant resides in California, it is unclear why Plaintiff would opt to commence this action in Colorado, other than to inconvenience Defendant." [Dkt. #32, p. 7]

It may be that the allegations set forth in the initial pleading are insufficient, in and of themselves, to establish personal jurisdiction. But that's not the issue before the Court on this Order to Show Cause as to why the Court should not invoke its inherent authority to sanction Mr. Liebowitz. Rather, the issue is whether Mr. Liebowitz had a colorable basis, predicated on existing legal authority and pre-filing factual investigation, to file the complaint in the District of Colorado.

As demonstrated below, regardless of any pleading deficiencies (which could have been rectified through an amended pleading or jurisdictional discovery), there is ample caselaw and factual evidence to support Mr. Liebowitz's decision to file suit in this District. Even if such decision ultimately turned out to be incorrect, such error in judgment is not a basis to impose sanctions against an attorney if he held a subjective good faith belief that the forum was proper. *Schlaifer Nance Co., Inc.,* 194 F.3d at 340.

### A. Legal Standard for Specific Jurisdiction

A court can assert specific jurisdiction if the plaintiff shows (1) the out-of-state company has "purposefully directed its activities at residents of the forum state," and (2) the plaintiff's injuries arose out of the company's forum-related activities (known as the "nexus" requirement). *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008) (internal quotation marks omitted).[2]

### B. Courts Routinely Exercise Specific Jurisdiction Over Out-of-State Defendants Who Sell Allegedly Infringing Copyrighted Materials to Residents of the Forum State

In copyright infringement actions, it is well-settled that district courts may exercise specific jurisdiction over out-of-state defendants who sell allegedly infringing products in the forum state. *See, e.g., Moser v. Ayala*, No. 11 C 3563, 2013 WL 1337187, at *6

---

[2] "Under the Colorado long arm statute, a person is subject to the jurisdiction of the courts of Colorado, 'concerning any cause of action arising from [t]he commission of a tortious act within [the] state.'" *AST Sports Science, Inc. v. CLF Distribution Ltd.,* 514 F.3d 1054, 1060 (10th Cir. 2008) (quoting Colo.Rev.Stat. § 13–1–124). "Frequently, the commission of a tort, in itself, creates a sufficient nexus between the defendant and the state so as to satisfy the due process inquiry." *D & D Fuller CATV Constr., Inc. v. Pace,* 780 P.2d 520, 525 (Colo.1989).

4

(N.D. Ill. Mar. 29, 2013) (exercising specific jurisdiction in copyright infringement action where out-of-state defendant entered into an agreement to distribute its alleged infringing materials across the United States, including in Illinois, and those materials were sold to Illinois customers.); *Gilbarco Inc. v. Tronitec, Inc.*, No. 1:11-CV-352, 2012 WL 1020244, at *6 (M.D.N.C. Mar. 26, 2012) (exercising specific jurisdiction in copyright infringement action where defendant "has done more than sell one infringing product in North Carolina; it has purposely availed itself by making a number of sales over many years to North Carolina customers, shipping products into the state, and specifically directing promotional e-mails to North Carolina customers"); *Allstar Marketing Group, LLC v. Your Store Online, LLC,* 666 F.Supp.2d 1109, 1122 (C.D. Cal. 2009) (in a copyright infringement case, a district court exercised personal jurisdiction over a defendant that operated "a highly commercial website through which regular sales of allegedly infringing products are made to customers in this state.").[3]

---

[3] See also *Mulcahy v. Cheetah Learning, LLC,* 2002 WL 31053211, *3–4 (D.Minn. Sept. 4, 2002) (court had specific jurisdiction over copyright infringement claim against out-of-state company; the company's website had advertised and sold tickets to Minnesota residents for an examination-preparation course to be held in Minnesota, and the very infringement alleged by the complaint was the defendant's unauthorized reproduction and distribution of copyrighted exam-preparation materials); *Graduate Mgmt. Admission Council v. Raju*, 241 F. Supp. 2d 589, 590, 597 (E.D. Va. 2003) (exercising specific jurisdiction in copyright infringement claim based on an internet website with an infringing domain name used to sell copyrighted materials in the United States); see also *Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998) (recognizing that trademark and copyright infringement actions are largely "akin to a tort case," such that the relevant analysis is whether the Defendant purposefully directed her activities to the forum state). The same principle applies to patent infringement cases. *See, e.g., Int'l Truck & Engine Corp. v. Dawson Int'l Inc.,* 216 F. Supp. 2d 754, 759 (N.D. Ind.

This has sometimes been referred to as the "stream of commerce" theory. *In Luv n' Care, Ltd. v. Insta–Mix, Inc.,* 438 F.3d 465, 473 (2006), the Fifth Circuit applied the stream of commerce theory to a copyright and trademark infringement action because "the same public policy concerns that [justified the] use of the stream-of-commerce principle in the products liability context [were] present." *Id.* at 472–73 (citation omitted).[4]

Further, for purposes of exercising specific jurisdiction, courts have recognized that it is not necessary that the copyright holder reside in the forum state. *See Rhino Metals, Inc. v. Kodiak Safe Co., LLC*, No. 1:16-285-EJL-REB, 2017 WL 2903339, at *9 (D. Idaho Mar. 25, 2017), *report and recommendation adopted,* No. 1:16-cv-00285-EJL-

---

2002) ("in patent cases, where a defendant infringer is shown to have sold or offered for sale an allegedly infringing product in the forum state, the forum may exercise specific personal jurisdiction"); *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 795, 812 (E.D. Tex. 2014) (Bryson, J.) ("With respect to its activities in Texas, [the defendant] is in the same situation as many other national corporations that sell products or services nationwide. Those companies are subject to specific jurisdiction in any district in which their infringing products are sold."); *Bluestone Innovations Tex., L.L.C. v. Formosa Epitaxy Inc.*, 822 F. Supp. 2d 657, 660, 664 (E.D. Tex. 2011) (patent infringement claims based on selling infringing products in the United States); *Silver Ring Splint Co. v. Digisplint, Inc.*, 508 F. Supp. 2d 508, 515 (W.D. Va. 2007) (finding that plaintiff's claims involving the marketing or sale of products infringing plaintiff's rights arose out of defendant's activities directed at the United States).

[4] In *Luv n' Care, Ltd .,* the Fifth Circuit exercised jurisdiction over a non-resident manufacturer after finding that the manufacturer had sufficient contacts with the state of Louisiana. *Id.* at 471–73. Even though the manufacturer allegedly had sold infringing products to Wal-mart, a third party distributor, the Fifth Circuit ruled that the exercise of jurisdiction was proper because the manufacturer had filled Wal-mart orders bound for Louisiana and "should have known, when it availed itself of the Louisiana market for infant care products, that it could face potential liability from competition with similarly designed items." *Id.* at 473; see also *Silver Dream, LLC v. Yousuf Int'l, Inc.,* No. CIV.A. 10-4247, 2011 WL 3268347, at *3 (E.D. La. July 28, 2011) (applying stream of commerce theory to copyright infringement suit).

REB, 2017 WL 2559775 (D. Idaho June 13, 2017) ("here a party brings a claim for infringement of intellectual property, "[i]t is foreseeable that the loss will be inflicted both in the forum where the infringement took place . . . and where the [intellectual property right holder] has its principal place of business.").

Similarly, it is not necessary that the alleged infringer reside in the forum state. See *NuboNau, Inc. v. NB Labs, Ltd*, No. 10-CV-2631-LAB-BGS, 2012 WL 843503, at *4 (S.D. Cal. Mar. 9, 2012) ("specific jurisdiction is 'tethered to a relationship between the forum and *the claim*,' not simply the forum and the defendant." (citation omitted) (emphasis added).

Here, based on existing caselaw, the District of Colorado is the appropriate forum for this action if it can be determined that defendant, a California entity, purposefully availed itself of Colorado's laws by selling allegedly infringing products in the State of Colorado. Moreover, for purposes of establishing specific jurisdiction, it is not required that plaintiff-copyright holder, a resident of Hawaii, reside in Colorado to file an action in this forum. In sum, it cannot be said that Mr. Liebowitz lacked any support in the existing caselaw to file suit on behalf of plaintiff in Colorado.

### C. Documentary Evidence Shows that Defendant Distributed Plaintiff's Photographs into the State of Colorado for the Purpose of Promoting its Products in Colorado

Based on his knowledge of existing caselaw, Mr. Liebowitz investigated whether Defendant sold allegedly infringing products in the State of Colorado. He determined that Defendant was in fact transacting business in the forum State by marketing and selling products featuring Plaintiff's copyrighted works without Plaintiff's authorization.

7

[*See* Dkt. #27-2 (showing that Defendant was issuing press releases to companies to Denver to promote sales of products in the State).] Further, documentary evidence attached hereto shows that Defendant transmitted promotional photographs into the State of Colorado for purposes of selling its products in this State. It is plausible that some of these photographs may have included Plaintiff's photographs. [Attached as Exhibit A to the Declaration of Richard Liebowitz is an article published by NATIVE SLOPE COLORADO entitled "*Hello, Hoven! 6 Things We Love About Hoven Sunglasses*" in which Native Slope indicated that Hoven's sales and marketing representative sent promotional photographs into the State of Colorado for the purpose of selling Hoven's products).

This factual evidence is sufficient to show that Mr. Liebowitz harbored a good faith basis to believe that the District of Colorado was the appropriate forum in which to file suit. Even if Mr. Liebowitz turned out to be wrong, it cannot be fairly stated that the selection of this District was objectively unreasonable, let alone made in bad faith.

## II.   AT THE TIME THE REPLY WAS FILED ON JULY 23, 2020, MR. LIEBOWITZ WAS IN GOOD STANDING.

By order dated July 6, 2020, the Disciplinary Panel for the U.S. District Court for the District of Colorado granted Mr. Liebowitz's application for relief from the rule of good standing and ordered the Clerk of Court to correct the court record to reflect that Mr. Liebowitz is in good standing in this District. *See In the Matter of Richard P. Liebowitz*, Disciplinary Action No. 20-CC-1. Mr. Liebowitz filed the reply until July 23, 2020 [Dkt. 27]. By order of the Disciplinary Panel, he was in good standing at the time the reply

8

papers were filed and there is no clear and convincing evidence that he acted in bad faith by relying on the Disciplinary Panel's Ruling.

### III. THE MOTION TO WITHDRAW SHOULD NOT BE STRICKEN.

Consideration of the procedural history of the case shows that Mr. Liebowitz was required to withdraw under D.C.COLO.L.AttyR 3(c). Therefore, his Motion to Withdraw should not be stricken. On June 3, 2020, the Clerk filed an Advisory Notice herein that stated Mr. Liebowitz was no longer in good stating and ineligible to practice under D.C.COLO.L.AttyR 3(c). [Dkt. #9 and #10] On June 9, 2020, Mr. Liebowitz, through undersigned counsel, filed a response to the Advisory Notice. [Dkt. #12] However, the response did not alter the effect of the Advisory Notice, Mr. Liebowitz was no longer a member "in good standing" of this District's bar and could not represent clients before this Court.

On June 12, 2020, Defendant filed a motion to dismiss Plaintiff's complaint under Rule 12(b)(2) of the Federal Rules of Civil Procedure and also requested monetary sanctions against Mr. Liebowitz under the Copyright Act, 17 U.S.C. § 505. [Dkt. #15][5] Defendant asserted "under the current state of the case, Mr. Liebowitz is not permitted to continue representing his clients before this Court." *Id.* p. 9. Mr. Liebowitz agreed with Defendant's interpretation of the effect of the Advisory Notice. On June 18, 2020, Craig Sanders entered his appearance for Plaintiff. [Dkt. #16] The same day, Mr. Liebowitz filed a document titled "Motion to Withdraw as Counsel" that stated in total "Richard

---

[5] Defendant did not serve a Rule 11 motion upon Mr. Liebowitz within 21 days of filing its motion for sanctions, as required by Fed.R.Civ.P. 11(c)(2); nor did Defendant move for attorney sanctions pursuant to the Court's inherent power or any other rule or statute.

9

Liebowitz hereby withdraws as counsel for Plaintiff." [Dkt. #17]  The title of this filing was a misnomer.  Mr. Liebowitz intended to provide the Court, counsel and parties with notice he was no longer acting as counsel of record because of the mandatory effect of the Advisory Notice and the only attorney representing Plaintiff was Mr. Sanders. D.C.COLO.LAttyR 5(b) permits an attorney to seek leave to withdraw if good cause exists.  Mr. Liebowitz respectfully submits that D.C.COLO.LAttyR 5(b) was not intended to address how an attorney how an attorney whose status has changed to no longer be "in good standing" should exit a case.  Rather, D.C.COLO.LAttyR 3(c) applied and states, "An attorney who is not in good standing <u>shall not practice</u> before the bar of this court <u>or continue to be an attorney of record in any pending case</u>."  (emphasis added) Nevertheless, if the Court concludes D.C.COLO.LAttyR 5(b) did apply, Mr. Liebowitz respectfully submits that the circumstances set forth above not only constituted "good cause" permitting his withdrawal, but mandated it.

On July 6, 2020, Plaintiff herein, through Mr. Sanders, filed a Notice of Voluntary Dismissal pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure. [Dkt. #19].  Coincidentally, also on July 6, 2020, the Disciplinary Panel for the District of Colorado entered its "Order on Relief from the Rule of Good Standing."  *Disciplinary Action No. 20-CC-1.* The July 6 Order returned Mr. Liebowitz to good standing status. For the reasons set forth above, Mr. Liebowitz submits his Motion to Withdraw should not be stricken.

## **CONCLUSION**

Richard Liebowitz respectfully requests that the Motion for Sanctions be denied in its entirety and the Motion to Withdraw not be stricken.

DATED:  December 21, 2020.

*/s/ Michael T. McConnell*
Michael T. McConnell
McCONNELL VAN PELT, LLC
4700 South Syracuse Street, Suite 200
Denver, Colorado 80237
Telephone No.  (303) 480-0400
Facsimile No. (303) 458-9520
Email:   mike@mvp-legal.com

ATTORNEYS FOR RICHARD LIEBOWITZ

11

## CERTIFICATE OF SERVICE (CM/ECF)

    I HEREBY CERTIFY that on this 21st day of December, 2020, the foregoing **RICHARD LIEBOWITZ'S RESPONSE TO ORDER TO SHOW CAUSE** was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to the following counsel of record:

Richard Liebowitz
Liebowitz Law Firm, PLLC
11 Sunrise Plaza, Suite 305
Valley Stream, NY 11580
rl@liebowitzlawfirm.com

Craig B. Sanders
Barshay Sanders PLLC
100 Garden City Plaza, Suite 500
Garden City, NY 11530
csanders@barshaysanders.com
*Attorneys for Plaintiff*

Jonathan E. Moskin
Coleman T. Lechner
Foley & Lardner LLP
600 17th Street, Suite 2020S
Denver, CO 80202
90 Park Ave.
New York, NY 10016
jmosking@foley.com
clechner@foley.com
*Attorneys for Defendant*

*/s/ Lindsay Gonzales*
Lindsay Gonzales, Legal Assistant